## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROBERT W. CRONIN,**

     **Plaintiff,**

**v.**                                 **Case No. 8:22-cv-565-MSS-UAM**

**RHONDA DAVIS, et al.,**

     **Defendants.**

_____

## ORDER

**THIS CAUSE** comes before the Court on Defendant Andre Hester's Motion to Dismiss, (Dkt. 23), Defendants Rhonda Davis and Jason Brenes-Catinchi's Motion to Dismiss, (Dkt. 34), and *pro se* Plaintiff Robert W. Cronin's responses to Defendants' Motions. (Dkts. 37, 43) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS in part** and **DENIES in part** Defendants' Motions to Dismiss.[1]

## I.    BACKGROUND

### A.    Factual Allegations

This case arises from Defendants' alleged failure to properly treat and accommodate Cronin's shoulder injuries from August 2018 to March 2022. During this time, Cronin primarily resided at Zephyrhills Correctional Institution

---

[1] Cronin's Motion for Expedited Review and Ruling, (Dkt. 44), is **GRANTED** to the extent that this Order resolves the pending Motions to Dismiss.

("Zephyrhills CI"). (Dkt. 1 at 4) Defendants Davis and Dr. Brenes-Catinchi worked for Centurion Healthcare Services, a private company that provided medical care to prisoners in the Florida Department of Corrections ("FDOC"). (Id.) Davis served as the Health Services Administrator at Zephyrhills CI, and she "controlled and supervised" Cronin's medical care. (Id.) Dr. Brenes-Catinchi served as Centurion's Acting Regional Medical Director. (Id. at 2, 4) Unlike Davis and Dr. Brenes-Catinchi, Defendant Hester was an FDOC employee. (Id.) He served as the Americans with Disabilities Act ("ADA") Coordinator for Zephyrhills CI and other facilities in central Florida. (Id.)

Cronin injured his left shoulder during a slip-and-fall incident in November 2015; he injured his right shoulder during another slip and fall in August 2017. (Id. at 5) As of August 2018, Cronin experienced severe shoulder pain ("level 9+") every day and was forced to perform daily activities "without help." (Id. at 7) For example, his locker was "extremely difficult to open," and the "buttons" on the sink, toilet, and shower were "hard to push." (Id. at 9) Cronin's "pain and suffering" were "exponentially magnified" when he was forced to temporarily transfer facilities for medical appointments—something that happened 29 times from August 2018 to March 2022. (Id. at 7) During the transfers, Cronin was forced to "carry all his property" while "handcuffed, shackled, and chained." (Id.) This exacerbated Cronin's shoulder injuries, "resulting in increased impairment/disability." (Id. at 6)

Starting in August 2018, Cronin submitted numerous grievances and inmate requests to Davis and Hester. (Id. at 7, 15-16) Cronin described the "substantial risk of

serious, excessive harm to his shoulders" resulting from prison officials' failure to "protect him." (Id. at 7) He also asked to be classified as an "ADA inmate" and to be provided with an "Impaired Inmate Assistant"—that is, someone who could help him with daily activities. (Id. at 6-7) Defendants allegedly ignored Cronin's requests, choosing to "disregard [his] serious medical[ ] needs in order to save money on the cost of ADA compliance." (Id. at 7, 15-16)

In February 2020, Cronin finally saw an orthopedist, who told him that both shoulders needed to be replaced. (Id. at 8) According to Cronin, the need for surgery was "serious and urgent" because his everyday activities were causing "extreme pain" and "degrad[ing] the . . . shoulder joints over time." (Id. at 15) Cronin repeatedly "conveyed his shoulder surgery needs" to Davis, but she allegedly delayed scheduling the surgeries "to save Centurion the cost of surgical procedures and [physical therapy]." (Id.)

On July 15, 2021—over a year after the orthopedist consult—Cronin underwent surgery to replace his right shoulder. (Id. at 8) The next day, Dr. Brenes-Catinchi saw Cronin for a "post-operative . . . examination." (Id. at 9) Cronin explained "the risk of possible injury to his new [ ] shoulder from having to perform" everyday activities without an inmate assistant. (Id.) He asked to be "designated as an ADA inmate" and provided with "accommodations," but Dr. Brenes-Catinchi allegedly "ignored his pleas," releasing him to a "non-ADA dorm" without any assistance. (Id.)

Four days later, correctional officers ordered Cronin to "strip his bed for sheet day." (Id.) They gave him two minutes to complete the task. (Id.) As he attempted to

comply, the "new prosthesis" was "dislocated" as a result of "the stress inadvertently placed on it while [he] pull[ed] the sheets off." (Id.) Cronin was taken to the emergency room and underwent another surgery to fix the prosthesis. (Id.) Upon his return to prison, Cronin saw Dr. Brenes-Catinchi for another "post-surgery exam." (Id.) Dr. Brenes-Catinchi allegedly said, "Dislocation is common in shoulder replacements." (Id.) In addition, Dr. Brenes-Catinchi "still refused" to classify Cronin as a disabled inmate or provide an inmate assistant—even though Cronin's right shoulder "was in worse pain now." (Id.)

On July 30, 2021, Dr. Brenes-Catinchi designated Cronin as suffering from a "minor physical impairment" with a duration of three months or less. (Id.) As a result of this "incorrect physical impairment grade," Cronin's latest request for an accommodation was "denied." (Id.) Approximately two weeks later, Cronin attended an "orthopedic consult follow-up." (Id. at 10) He told the orthopedist about his "serious [ ] shoulder pain" as well as the numbness he experienced in both hands. (Id.) An X-ray revealed that the prosthesis "had dislocated again," so Cronin underwent yet another surgery. (Id.) Cronin attributes the "repeated dislocation[s]" to "physical stress caused by the deficient post-[operation] . . . protocols" at his facility. (Id.)

In December 2021, Dr. Carlos Gonzalez-Pagan—a non-party to this action— finally classified Cronin as disabled and issued a "medical pass" for an inmate assistant to help him with everyday activities. (Id. at 13) Yet as of the date Cronin filed this action (March 2022), he had yet to be assigned an inmate assistant. (Id.) Moreover, although an orthopedist told Cronin in February 2020 that his left shoulder needed to

be replaced, he still had not undergone that procedure as of March 2022. (Id. at 8, 15) According to Cronin, a "property" sergeant at Zephyrhills CI told him that Centurion employees would "probably . . . just . . . wait till [he is released] so they don't have to pay for surgery." (Id. at 12) A classification officer allegedly echoed this assertion, telling Cronin that "Centurion won't want to send [him] for shoulder surgeries because he [will be released] in [September] 2022 and they will attempt to save money on fixing his shoulders." (Id.)

Cronin separately alleges that in August 2018, Defendants wrongfully discontinued his prescription for Tegretol, which had been "effective in treating his mania and mood variations as well as the serious pain emanating from [his] unrepaired shoulders." (Id. at 17) Two psychiatrists—non-parties Dr. Rohana and Dr. Cadena— allegedly determined that the Tegretol "may be causing [Cronin's] anemia." (Id. at 13) Cronin was placed on "alternative[ ]" medications, but they were "not effective or produced adverse reactions." (Id.) In January 2019, another psychiatrist requested that Cronin receive a "Drug Exception Request" for Tegretol. (Id.) Centurion denied the request. (Id.)

### B.    Procedural History

Cronin brought this civil rights action against Davis, Hester, and Dr. Brenes-Catinchi, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Id. at 15-17) Specifically, Cronin asserts that (1) Davis intentionally delayed his shoulder surgeries out of a "personal desire to save Centurion the cost of surgical procedures and [physical therapy]"; (2) Davis, Hester,

5

and Dr. Brenes-Catinchi refused to properly classify him as disabled—and thus ensure he received appropriate accommodations for his shoulder injuries—in order to "save money on the cost of ADA compliance"; (3) Davis, Hester, and Dr. Brenes-Catinchi ignored the harm caused by prison transfers during which "[he] [was] coerced to carry his property to/from the prison bus"; and (4) Davis, Hester, and Dr. Brenes-Catinchi wrongly discontinued his Tegretol prescription for "non-medical, non-psychiatric reasons of security . . . or cost." (Id.) Additionally, Cronin cites the ADA in the "Basis for Jurisdiction" section of his Complaint, but he does not include an ADA claim in the "Causes of Action" section. (Id. at 3, 15) As relief, Cronin seeks compensatory and punitive damages. (Id. at 5)

Defendants move to dismiss the Complaint. (Dkts. 23, 34) They argue that (1) the Complaint is an impermissible shotgun pleading, (2) Cronin failed to exhaust his administrative remedies as to the claims against Davis and Dr. Brenes-Catinchi, (3) Cronin failed to accurately disclose his litigation history, (4) Cronin failed to comply with Florida's pre-suit "notice requirements" for medical negligence and medical malpractice claims, (5) the Complaint fails to state an ADA claim or an Eighth Amendment claim for deliberate indifference to serious medical needs, and (6) Hester is entitled to qualified immunity. (Id.)

## II.    LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.

1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S. Ct. at 1964-65). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994-95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.    DISCUSSION

The Court first considers Defendants' non-merits arguments for dismissal. Those arguments fail. Specifically, the Complaint is not a shotgun pleading, Defendants have not shown that Cronin failed to exhaust his administrative remedies, Cronin did not intentionally fail to disclose his litigation history, and Cronin was not required to comply with Florida's pre-suit notice requirements.

The Court next turns to Defendants' merits arguments. Cronin fails to state an ADA claim. He also fails to state an Eighth Amendment claim based on the discontinuation of his Tegretol prescription. Cronin does, however, state viable Eighth Amendment claims based on the delay in scheduling his shoulder surgeries, the failure to properly accommodate his shoulder injuries, and the failure to address the issues he experienced during prison transfers. Furthermore, Hester is not entitled to qualified immunity at this stage of the litigation.

### A.    Shotgun Pleading

The Complaint is not an impermissible shotgun pleading. A federal pleading violates the prohibition against "shotgun" pleadings if it "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). "While [the Eleventh Circuit has] identified several pleading deficiencies indicative of a 'shotgun pleading,' the underlying issue is one of substance, not form—that is, whether the complaint gave the defendants fair 'notice of the specific claims against them and the factual allegations that support those claims.'" Charles v. GEO Grp. Inc., No. 22-13891, 2024 WL 1619911, at *2 (11th Cir. Apr. 15, 2024) (quoting Weiland, 792 F.3d at 1325).[2]

---

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

The Complaint is not a shotgun pleading because it gives Defendants "adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1320. Cronin alleges that Defendants violated the Eighth Amendment by displaying deliberate indifference to his shoulder-related medical needs. (Dkt. 1 at 15-17) He sets out his factual allegations in numbered paragraphs, providing a chronology of the allegedly inadequate treatment he received for his injuries from August 2018 to March 2022. (Id. at 6-14) Cronin also explains the role of each Defendant in his medical care. (Id.) Based on these factual allegations, Cronin identifies four "Causes of Action" corresponding to (1) the delay in scheduling his shoulder surgeries, (2) the refusal to properly accommodate his shoulder injuries, (3) the failure to address the issues he experienced during prison transfers, and (4) the discontinuation of his Tegretol prescription. (Id. at 15-17) As the factual summary above makes clear, Cronin's allegations are relatively straightforward and easy to comprehend. Thus, although the Complaint is not a "model of efficiency or specificity," it "adequately put[s] [Defendants] on notice of the specific claims against them and the factual allegations that support those claims." Weiland, 792 F.3d at 1325. As a result, the Complaint is not subject to dismissal as a shotgun pleading.

## B.     Exhaustion

Nor is the Complaint subject to dismissal for failure to exhaust. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging

harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a [42 U.S.C.] § 1983 lawsuit." Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules." Jones v. Bock, 549 U.S. 199, 218 (2007).

"In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). A court follows a "two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust." Id. First, the court "look[s] to the factual allegations in the motion to dismiss and those in the prisoner's response and accept[s] the prisoner's view of the facts as true." Id. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id. Second, "if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust." Id. "[D]efendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

Defendants have not met their burden of showing that Cronin failed to exhaust his administrative remedies. In their Motion to Dismiss, they assert that "[u]pon review of the administrative records received, it does not appear that [Cronin] properly and timely exhausted his administrative remedies as to . . . Davis and Dr. Brenes-

10

Catinchi." (Dkt. 34 at 15) But Defendants do not attach any "administrative records" to their motion, nor do they submit any other evidence to support their exhaustion argument. In response, Cronin alleges that he "fully exhausted his administrative remedies of inmate grievances and appeals . . . ad nauseam." (Dkt. 43 at 2) Accepting this allegation as true—as is required at the first step of the analysis—Defendants are not "entitled to have the complaint dismissed for failure to exhaust administrative remedies." Turner, 541 F.3d at 1082.

The next step is to "make specific findings in order to resolve the disputed factual issues related to exhaustion." Id. Here, Defendants "bear the burden of proving that [Cronin] has failed to exhaust his available administrative remedies." Id. Defendants have not met that burden because they failed to submit any evidence supporting their assertion that Cronin failed to fully exhaust his remedies. Of course, the unsupported statements in their Motion to Dismiss are not evidence. See Morales v. Comm'r of Soc. Sec., 799 F. App'x 672, 676 (11th Cir. 2020) ("We have only the assertions in [plaintiff's] brief, which are not evidence."). Because Defendants "have provided no evidence, they have not met their burden" to show lack of exhaustion. Pray v. Ogunsanwo, No. 3:16-cv-180-MMH-JBT, 2018 WL 1169641, at *4 (M.D. Fla. Mar. 6, 2018); see also Major v. Jones, No. 7:21-cv-51-WLS, 2022 WL 22867310, at *4 (M.D. Ga. June 28, 2022) ("Defendant bears the burden of proof under the Turner inquiry, and he has failed to carry his burden because he did not provide any evidence regarding Plaintiff's exhaustion of his administrative remedies."), adopted by 2022 WL 22867309 (M.D. Ga. July 20, 2022); Dudley v. Gandy, No. 7:11-cv-4170-LSC,

11

2014 WL 5020102, at *5 (N.D. Ala. Oct. 7, 2014) ("Under the two-step analysis in Turner . . . Plaintiff has made a facial showing of exhaustion (because the Court assumes his assertions to be true), and Defendants have not presented any evidence to meet their burden of proving he has not exhausted his remedies.").

### C.    Failure to Disclose Litigation History

Likewise, dismissal is not warranted on the ground that Cronin failed to fully disclose his litigation history. Under the PLRA, "[a] finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal." Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997). "Bad faith" and "manipulative tactics" include "lying about one's litigation history." Kendrick v. Sec'y, Fla. Dep't of Corr., No. 21-12686, 2022 WL 2388425, at *3 (11th Cir. July 1, 2022). But dismissal is appropriate only where the plaintiff "intentionally misrepresented his litigation history." Adams v. Todd, No. 23-10908, 2024 WL 4449453, at *6 (11th Cir. Oct. 9, 2024); see also Hines v. Thomas, 604 F. App'x 796, 801 (11th Cir. 2015) ("While it is apparent that [plaintiff] was certainly negligent in failing to inform the court of his litigation history, his actions as a whole do not present a clear record of willful misconduct.").

There is no evidence that Cronin "engaged in bad faith litigiousness or manipulative tactics." Attwood, 105 F.3d at 613. The complaint form required Cronin to disclose any prior "lawsuits in state or federal court . . . relating to the conditions of [his] imprisonment." (Dkt. 1 at 23) In response, Cronin listed two prior federal cases. (Id. at 24-25) But he failed to disclose a state-court mandamus action from 2011:

Cronin v. Dep't of Corr., No. 2011-CA-348 (2d Jud. Cir. Ct.). In that case, Cronin challenged an "administrative disciplinary action taken against" him for lying to staff and falsifying records. Cronin v. Dep't of Corr., No. 2011-CA-348, Order Dismissing Petition (2d Jud. Cir. Ct. Feb. 6, 2012). The mandamus petition was dismissed as moot after the "disciplinary report" was "expunged" and Cronin's "forfeited gain time [was] restored." Id.

In these circumstances, the Court cannot say that Cronin "intentionally misrepresented his litigation history." Adams, 2024 WL 4449453, at *6. The form required him to disclose any prior "lawsuits. . . relating to the conditions of [his] imprisonment." (Dkt. 1 at 23) There is a good-faith argument that the mandamus action did not concern Cronin's "conditions of imprisonment"—and thus did not need to be disclosed. The phrase "conditions of imprisonment" encompasses "all conditions under which a prisoner is confined for his term of imprisonment," including "the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). Conditions-of-confinement claims are distinguished from habeas claims, which seek to "attack the fact or duration of physical imprisonment and to obtain immediate or speedier release." Valle v. Sec'y, Fla. Dep't of Corr., 654 F.3d 1266, 1267 (11th Cir. 2011).

The mandamus petition fell on the habeas side of the line. Through his petition, Cronin sought to restore gain time that he had lost during a disciplinary proceeding. Thus, the petition arguably challenged the "duration" rather than the "conditions" of

13

his confinement. <u>Vaz v. Skinner</u>, 634 F. App'x 778, 780 (11th Cir. 2015); <u>see also</u> <u>Himko v. English</u>, No. 5:16-cv-35-MMP-EMT, 2016 WL 7645584, at *4 (N.D. Fla. Dec. 5, 2016) (distinguishing between "claims challenging the execution of [a] sentence"—for example, "claims challenging the forfeiture of gain time"—and "claims challenging only the conditions of confinement and not the length thereof"), <u>adopted by</u> 2017 WL 54246 (N.D. Fla. Jan. 4, 2017). At the very least, the form did not clearly require disclosure of the mandamus action. Therefore, Cronin's failure to list the action in his complaint does not reflect "bad faith litigiousness or manipulative tactics." <u>Attwood</u>, 105 F.3d at 613.

### D.   Pre-suit Notice Requirements

Defendants contend that the Complaint must be dismissed because Cronin failed to comply with Florida's "pre-suit notice and screening requirements." (Dkt. 34 at 18) This argument is meritless. Florida law "imposes certain notice and pre-suit screening requirements" on plaintiffs who wish to bring "medical malpractice and medical negligence actions." <u>J.B. v. Sacred Heart Hosp. of Pensacola</u>, 635 So. 2d 945, 948 (Fla. 1994); <u>see also</u> Fla. Stat §§ 766.106(2)-(3). Those requirements "include conducting a pre-suit investigation process to ascertain whether there are reasonable grounds to believe that the defendant medical provider was negligent, and that the negligence resulted in injury to the claimant." <u>Weaver v. Myers</u>, 229 So. 3d 1118, 1121 (Fla. 2017).

Here, however, Cronin does not bring any medical negligence or medical malpractice claims under Florida law. Instead, he sues Defendants under federal law—

*i.e.*, the Eighth Amendment and (possibly) the ADA. (Dkt. 1 at 3) Thus, Cronin was not required to comply with Florida's pre-suit notice requirements. See Windom v. Orange Cnty., No. 6:23-cv-761-JA-EJK, 2024 WL 361362, at *2 (M.D. Fla. Jan. 31, 2024) (plaintiff not "required to comply with the medical malpractice pre-suit notice screening process" because he "assert[ed] a claim for deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendment," not "a claim for medical malpractice"); Alvarez v. Brevard Cnty., No. 6:12-cv-1762-JA-KRS, 2013 WL 1686115, at *2 (M.D. Fla. Apr. 18, 2013) (declining to dismiss for failure to comply with Florida's pre-suit notice requirements because "the claim against [defendant] [was] not a state law medical negligence claim but a § 1983 claim in which plaintiffs allege[d] that [defendant] acted not merely with negligence but with deliberate indifference to [plaintiffs'] constitutional rights").

### E.    ADA

As an initial matter, it is unclear whether Cronin intends to assert an ADA claim. As noted above, Cronin cites the ADA in the "Basis for Jurisdiction" section of his Complaint, but he does not include an ADA claim in the "Causes of Action" section. (Dkt. 1 at 3, 15) Even if Cronin had intended to bring an ADA claim, it would be subject to dismissal.

Title II of the ADA bars public entities from discriminating against individuals with disabilities or denying them services because of their disabilities. See 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). Here, Cronin sues Davis, Hester,

and Dr. Brenes-Catinchi in their individual capacities. (Dkt. 1 at 2-3) But "there is no individual capacity liability under . . . the ADA." Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005); see also Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 478 (11th Cir. 2015) ("Since only public entities may be liable under the ADA, [plaintiff] fails to state ADA claims against [defendants] in their individual capacities."); Cottrell v. Martinelli, No. 8:20-cv-2137-TPB-TGW, 2021 WL 4459646, at *3 (M.D. Fla. Sept. 29, 2021) ("[Plaintiff] cannot pursue an ADA claim against an individual defendant."). Accordingly, the ADA claim is dismissed without prejudice.

### F.    Eighth Amendment

Cronin's remaining claims arise under the Eighth Amendment. The Court concludes that Cronin states plausible Eighth Amendment claims based on the delay in scheduling his shoulder surgeries, the failure to properly accommodate his shoulder injuries, and the failure to address the issues he experienced during prison transfers. Cronin fails, however, to state a claim based on the discontinuation of his Tegretol prescription.

"[P]rison officials violate the bar on cruel and unusual punishments when they display deliberate indifference to serious medical needs of prisoners." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020). To state a deliberate indifference claim, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). An objectively serious medical need "is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1326 (11th Cir. 2007). To plead deliberate indifference, the second element, a plaintiff must allege that the defendant "was subjectively aware that his own conduct . . . put the plaintiff at substantial risk of serious harm." <u>Wade v. McDade</u>, 106 F.4th 1251, 1255 (11th Cir. 2024).

### 1. *Delay in Scheduling Surgeries*

Cronin states a deliberate indifference claim against Davis for delaying his shoulder surgeries. As an initial matter, Cronin adequately alleges that his shoulder injuries constituted an objectively serious medical need. He pleads that, as a result of two slip and falls, he experienced severe shoulder pain ("level 9+") every day starting in August 2018. (Dkt. 1 at 7) Cronin further alleges that in February 2020, an orthopedist told him that both of his shoulders needed to be replaced. (<u>Id.</u> at 8) The need for surgery was allegedly "serious and urgent" because Cronin's everyday activities were causing "extreme pain" and "degrad[ing] the . . . shoulder joints over time." (<u>Id.</u> at 15) Yet, according to the Complaint, Cronin did not undergo surgery on his right shoulder until July 2021 (over a year after the orthopedist consult), and he had yet to undergo surgery on his right shoulder as of March 2022. (<u>Id.</u> at 8, 15) "[S]evere pain that is not promptly or adequately treated can present a serious medical need." <u>Hinson v. Bias</u>, 927 F.3d 1103, 1122 (11th Cir. 2019); <u>see also</u> <u>Adams</u>, No. 23-2024 WL 4449453, at *3 ("[T]he mistreatment or lack of treatment of severe pain can form the basis for a deliberate indifference claim." (collecting cases)).

Cronin also plausibly alleges that Davis was deliberately indifferent to his need for shoulder surgery, and that this indifference prolonged his severe pain. According to the Complaint, Cronin repeatedly "conveyed his shoulder surgery needs" to Davis, but she delayed scheduling the surgeries "to save Centurion the cost of surgical procedures and [physical therapy]." (Dkt. 1 at 15) "[P]rison officials who substantially delay or deny inmates necessary medical care for nonmedical reasons such as cost savings can violate the inmate's Eighth Amendment rights." Brewington v. Correct Health, No. 4:21-cv-261, 2022 WL 2307469, at *2 (S.D. Ga. June 27, 2022) (collecting cases). Thus, Cronin adequately alleges that Davis was deliberately indifferent to his serious medical needs. See Fields v. Corizon Health, Inc., 490 F. App'x 174, 185 (11th Cir. 2012) ("[C]ost is not a factor which can justify the lack of timely medical treatment for [a serious medical need]."). Likewise, Cronin sufficiently alleges that Davis's delay in scheduling the surgeries contributed to his "extreme pain." See Adams, 2024 WL 4449453, at *4 (causation adequately alleged where denial of treatment "prolonged [plaintiff's] severe pain"). Thus, Cronin states an Eighth Amendment claim against Davis for delaying his shoulder surgeries.

2.  *Failure to Accommodate Shoulder Injuries and Address Prison Transfers*

Cronin likewise states an Eighth Amendment claim against Davis, Hester, and Dr. Brenes-Catinchi for their failure to (1) accommodate his shoulder injuries and (2) address the issues he experienced during prison transfers. Cronin alleges that everyday activities—for example, pushing "buttons" on the toilet—caused him "extreme pain" and "degrade[d] [his] . . . shoulder joints over time." (Dkt. 1 at 9, 15) His "pain and

suffering" were "exponentially magnified" when he was repeatedly forced to transfer facilities for medical appointments. (Id. at 7) Specifically, Cronin was required to "carry all his property" while "handcuffed, shackled, and chained." (Id.) This exacerbated his shoulder injuries, "resulting in increased impairment/disability." (Id. at 6) Cronin alleges that he submitted numerous grievances and inmate requests to Davis and Hester, describing his "substantial risk" of injury and requesting accommodation as a disabled inmate—for example, the provision of an inmate assistant to help with everyday tasks. (Id. at 6-7, 15-16) Cronin made the same plea during two in-person visits with Dr. Brenes-Catinchi. (Id. at 9) Yet Defendants allegedly ignored Cronin's requests, choosing to "disregard [his] serious medical[ ] needs in order to save money on the cost of ADA compliance." (Id. at 7, 15-16) One result of this "disregard" was that Cronin twice dislocated the prosthesis he received for his right shoulder. (Id. at 9-10)

Simply put, Cronin alleges that Defendants failed to provide appropriate care for his shoulder injuries in order to save money and that as a result his injuries were exacerbated and he suffered severe pain. Taken as true, these allegations are sufficient to plead that Defendants were deliberately indifferent to Cronin's serious medical needs. See Ancata v. Prison Health Servs., 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care or treatment of inmates."); Hutto v. Warden, No. 1:23-cv-119-MHC-JSA, 2023 WL 11959636, at *3 (N.D. Ga. Mar. 13, 2023) (allowing plaintiff to proceed on claim that defendants "were deliberately indifferent to his serious medical needs by failing to

provide him with a handicap-accessible shower, which posed an unreasonable risk of, and caused, serious damage to his health"), <u>adopted by</u> 2023 WL 11959638 (N.D. Ga. Apr. 4, 2023).

### 3.    *Discontinuation of Tegretol*

Cronin fails, however, to state a claim based on the discontinuation of his Tegretol prescription. He alleges that Tegretol was "effective in treating his mania and mood variations as well as the serious pain emanating from [his] unrepaired shoulders." (Dkt. 1 at 17) In August 2018, however, two psychiatrists—Dr. Rohana and Dr. Cadena—determined that the Tegretol "may be causing [Cronin's] anemia." (<u>Id.</u> at 13) Cronin was subsequently placed on "alternative[ ]" medications, but they were "not effective or produced adverse reactions." (<u>Id.</u>)

These allegations boil down to "a simple difference in medical opinion between the prison's medical staff and [Cronin] as to the latter's . . . course of treatment." <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1266 (11th Cir. 2020). Such disagreement is insufficient to "support a claim of cruel and unusual punishment." <u>Id.</u>; <u>see also</u> <u>Hines v. Parker</u>, 725 F. App'x 801, 805 (11th Cir. 2018) ("[Plaintiff's] disagreement with Nurse Practitioner Browning's choice of which pain medicine to administer does not establish deliberate indifference."). Indeed, the Complaint itself suggests that Defendants replaced the Tegretol with other medications because two psychiatrists opined that Tegretol "may be causing [Cronin's] anemia." (Dkt. at 13) Cronin may disagree with this course of treatment, but he fails to allege that it was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness." <u>Keohane</u>, 952 F.3d at 1266; <u>see also</u> <u>Ross v.</u> <u>Corizon Med. Servs.</u>, 700 F. App'x 914, 916 (11th Cir. 2017) ("The failure to administer stronger medication is generally a medical judgment that is not an appropriate basis for imposing liability."). Accordingly, the Court dismisses without prejudice the Eighth Amendment claim based on the discontinuation of the Tegretol prescription.

### G.    Qualified Immunity

Finally, Hester argues that he is entitled to qualified immunity because the Complaint fails to allege that he "commit[ted] any unlawful acts in violation of [Cronin's] constitutional rights."[3] (Dkt. 23 at 7) The Court concludes that Hester is not entitled to qualified immunity at this early stage of the litigation.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Loftus v. Clark-Moore</u>, 690 F.3d 1200, 1204 (11th Cir. 2012). To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." <u>Robinson</u> <u>v. Sauls</u>, 46 F.4th 1332, 1340 (11th Cir. 2022). "To overcome a qualified immunity defense where the defendant acted within his discretionary authority, the plaintiff must show that the defendant's actions not only (1) violated one or more constitutional

---

[3] In their Motion to Dismiss, Davis and Dr. Brenes-Catinchi do not raise a qualified immunity defense. (Dkt. 34)

rights, but also (2) that it was clearly established at the time that those specific actions did so." Franklin v. Popovich, 111 F.4th 1188, 1194 (11th Cir. 2024). Thus, a motion to dismiss on qualified immunity grounds "will be granted if the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

There is no dispute that Hester acted within the scope of his discretionary authority at all relevant times. Moreover, the Court has already concluded that Cronin states an Eighth Amendment claim against Hester for failing to (1) accommodate his shoulder injuries and (2) address the issues he experienced during prison transfers. The question thus becomes whether, "at the time of the alleged conduct," Hester violated "clearly established law." Mikko v. City of Atlanta, 857 F.3d 1136, 1146 (11th Cir. 2017). The answer to that question is yes, assuming, as the Court must, that Cronin's allegations are true.

"A plaintiff may show that a right was clearly established through: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Prosper v. Martin, 989 F.3d 1242, 1251 (11th Cir. 2021).

A "broad statement of principle" controls here. Id. Any reasonable official would have known in August 2018 that a failure to properly treat a serious medical need may violate the Eighth Amendment if it is motivated by nonmedical reasons such

as cost savings. See Ancata, 769 F.2d at 705 ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care or treatment of inmates."); Harris v. Coweta Cnty., 21 F.3d 388, 394 (11th Cir. 1994) ("Under the clearly established legal norms, a reasonable sheriff would have known that delaying prescribed treatment for a serious medical need for several weeks for a nonmedical reason may violate an inmate's constitutional rights."); Collier v. Jones, No. 4:19-cv-53-RH-MAF, 2021 WL 1180781, at *5 (N.D. Fla. Feb. 17, 2021) (denying qualified immunity because "[i]t has been well established that costs for treatment is not a factor which can justify the lack of timely medical treatment for a prisoner's serious medical needs"), adopted by 2021 WL 1172448 (N.D. Fla. Mar. 29, 2021). Here, Cronin alleges that "in order to save money on the cost of ADA compliance," Hester ignored his complaints about the severe pain he experienced while performing everyday tasks and while being transferred to various facilities. (Dkt. 1 at 7, 15-16) Case law bars this alleged conduct with enough clarity to put any reasonable officer on notice of the constitutional violation. Thus, at this early stage of the litigation, Hester is not entitled to qualified immunity.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motions to Dismiss, (Dkts. 23, 34) are **GRANTED in part** and **DENIED in part**.

    a.  The ADA claim is **DISMISSED without prejudice**.

    b.   The Eighth Amendment claim based on the discontinuation of Cronin's Tegretol prescription is **DISMISSED without prejudice**.

    c.   The following claims **SURVIVE**: (1) the Eighth Amendment claim against Davis for delaying Cronin's shoulder surgeries, and (2) the Eighth Amendment claim against Davis, Hester, and Dr. Brenes-Catinchi for failing to accommodate Cronin's shoulder injuries and failing to address the issues he experienced during prison transfers.

2.   Within **THIRTY** days of the date of this Order, Cronin must either (1) file an amended complaint that includes all the claims that he wishes the Court to consider, or (2) file a notice informing the Court that he wishes to proceed only on the surviving Eighth Amendment claims from his initial Complaint.

3.   Cronin's Motion for Expedited Review and Ruling, (Dkt. 44), is **GRANTED** to the extent that this Order resolves the pending Motions to Dismiss.

4.   The Clerk is **DIRECTED** to lift the stay and reopen this case.

5.   The Clerk is further **DIRECTED** to mail to Cronin a copy of the standard prisoner civil rights complaint form.

    **DONE** and **ORDERED** in Tampa, Florida, this 6th day of February 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE